A95A1733. AMERICAN HOME ASSURANCE COMPANY
v. SMITH et al.
(462 SE2d 441)

JOHNSON, Judge.

Denise Hatch Kennedy was referred to R. Douglas Smith, Ph.D., a psychologist, for diagnostic clarification and formulation of a treatment plan for a multiple personality disorder. Smith actually initiated treatment and identified at least four or five separate personalities, known as alters, living inside Kennedy. According to Smith's deposition testimony, the goal of his treatment was to integrate the various alters into a single "host" personality. As part of the therapy, Smith

assumed some of the characteristics of the perpetrators of past sexual abuse in order to elicit the "re-experiencing" of traumatic events so that the past trauma could be recognized and resolved. Kennedy suspected the therapy she was receiving from Smith was inappropriate, and she contacted the police. She was fitted with a concealed electronic transmitting device, and several sessions were recorded. During one session, Smith placed Kennedy under hypnosis and suggested that she felt very sensual. He then suggested that he lay beside her and hold her. In another session he asked one of Kennedy's alters, "Sabrina," to present herself. Smith then urged her to please him, and make him happy. He told her to lower her jeans and underclothes so that he could hold her closely and kiss her, ostensibly to create a scenario similar to an event she had previously described involving her father. At that point in the session, Kennedy gave a code word to police who interrupted the session.

Kennedy brought suit against Smith alleging malpractice. His insurance carrier, American Home Assurance Company, filed the underlying declaratory judgment action to determine the scope of coverage available. We granted American Home's application for interlocutory appeal from the trial court's denial of its motion for summary judgment. This appeal presents us with two issues for resolution: First, whether the trial court erred in holding that a special provision relating to sexual misconduct in the Psychologists Professional Liability Policy issued by American Home to Smith, which limits recovery to $25,000 for claims against its insureds arising out of "actual or alleged erotic physical contact," contravenes public policy and is void;[1] and second, whether the trial court erred in concluding that there was a jury question as to whether Smith's acts constitute sexual misconduct as defined in the policy. The trial court concluded that the special provision in the policy relating to sexual misconduct violates public policy because it penalizes patients who report sexual misconduct of their psychologists, discouraging injured clients from taking action to stop sexual misconduct of psychologists. Because we believe that this conclusion unfairly presumes that an injured plaintiff decides whether to sue based upon the amount of insurance coverage available, and

---

[1] The special provision appears in the policy as follows:
"1. SEXUAL MISCONDUCT — The total limit of the Company's liability hereunder shall not exceed $25,000 in the aggregate for all damages with respect to the total of all claims against any Insured(s) involving any actual or alleged erotic physical contact, or attempt thereat (sic) or proposal thereof: a) by an Insured . . . b) with or to any former or current patient or client of any Insured, or with or to any relative of or members of the same household as any said patient or client . . . In the event any of the foregoing are alleged at any time, either in a complaint, during discovery, at trial or otherwise, any and all causes of action alleged and arising out of the same or related courses of professional treatment and/or relationships shall be subject to the aforesaid $25,000 aggregate limit of liability and to all other provisions of this clause."

because we find that the freedom to contract for varying levels of coverage for various risks does not, in and of itself, violate public policy, we reverse.

1. While this is a case of first impression in Georgia, several other states have analyzed this provision in terms of whether it violates public policy.[2] "It is well settled that contracts will not be avoided by the courts as against public policy, except where the case is free from doubt and where an injury to the public interest clearly appears. . . . Unless prohibited by statute or public policy, the parties are free to contract on any terms and about any subject matter in which they have an interest, and any impairment of that right must be specifically expressed or necessarily implied by the legislature in a statutory prohibition and not left to speculation." (Citations and punctuation omitted.) *City of Pembroke v. Hagin*, 194 Ga. App. 642, 643 (1) (391 SE2d 465) (1990). Insurance policies are not excepted from the general principle of freedom to contract. "An insurance company may fix the terms of its policies as it wishes, provided they are not contrary to law, and it may insure against certain risks and exclude others. If the terms of the contract are clear and express, the courts cannot extend or enlarge the contract by implication or construction so as to embrace an object or limitation distinct from that originally contemplated and not included in the express provisions. In those cases where restrictions or limitations have been imposed by the courts on the right of an insurer to define and limit the risk or liability assumed under the terms of a policy, it has been on the basis of mandatory statutory provisions specifying the minimum coverage to be provided." (Citations and punctuation omitted.) *Hulstzman v. State Farm &c. Ins. Co.*, 188 Ga. App. 12, 13 (2) (372 SE2d 9) (1988).

Georgia has a policy of protecting psychotherapy patients from sexual exploitation by therapists, and a psychotherapist who engages in a sexual relationship with his or her patient is guilty of a criminal offense. OCGA § 16-6-5.1. A civil remedy may also be available, although Georgia's criminal statute does not directly contemplate one. However, simply because the Georgia legislature has evinced an inter-

---

[2] The trial court in this case has oversimplified the ruling in *American Home Assur. Co. v. Cohen*, 881 P2d 1001, 1005 (1) (124 Wash. 2d 865) (1994), which held that it is not against the public policy of the state for an insurer to provide lesser coverage for a psychologist's sexual misconduct than it provides for the psychologist's non-sexual misconduct but it is against public policy for an insurer to provide lesser coverage for a psychologist's non-sexual misconduct, where sexual misconduct is also alleged as having occurred in the same or related course of professional treatment, than the coverage that is provided where only non-sexual misconduct is claimed. Id. at 1009 (4). See *American Home Assur. Co. v. Stone*, 1995 WL 459228 (7th Cir. Ill.) (decided August 4, 1995) [or 1995 U. S. App. LEXIS 20695]; *American Home Assur. Co. v. Bell*, unpublished opinion, Colorado Court of Appeals (Case No. 92CA0669, decided July 15, 1993); *American Assur. Co. v. Bylund*, No. 91-6091 (C.D. Cal. 1992); *American Home Assur. Co. v. Oraker*, No. 90CV6483 (Colo. Dist. Ct., March 5, 1992).

est in protecting the public from sexual exploitation by therapists, it has not created a statutory obligation requiring psychologists to maintain malpractice liability insurance at all, much less insurance for claims of sexual misconduct. Therefore, it cannot be contrary to the public interest to allow insurers to limit their coverage for this specific risk, that is, their insured's sexual misconduct. Of course, a victim-patient awarded damages in an amount over a coverage limit is not precluded from attempting to recover any deficiency from the therapist personally. Absent a more definitive pronouncement by the Georgia legislature, this court declines to hold that an insurer's limitation of coverage in actions involving sexual misconduct violates public policy. This position is consistent with our recent decision in *St. Paul &c. Ins. Co. v. Alderman*, 216 Ga. App. 777 (455 SE2d 852) (1995), in which we found that no coverage was available under a professional liability policy for a claim of sexual misconduct against a physician. The provision in American Home's malpractice liability insurance policy limiting its liability to $25,000 in lawsuits involving sexual misconduct by the insured is not void as against Georgia public policy, and the trial court's denial of American Home's motion for summary judgment must be reversed.

2. The second issue is whether Smith's acts constituted "actual or alleged erotic physical contact" so as to trigger the special provision in the policy. Because "erotic physical contact" is not a defined term in the policy, we look to the applicable principles of contract construction. "The words used in policies of insurance, as in all other contracts, bear their usual and common significance, and policies of insurance are, as all other contracts, to be construed in their ordinary meaning." (Citations and punctuation omitted.) *American States Ins. Co. v. Zippro Constr. Co.*, 216 Ga. App. 499, 500-501 (1) (455 SE2d 133) (1995). Erotic is defined as "pertaining to or treating sexual love, pursuing or satisfying sexual desire; subject to or marked by strong sexual desire." Random House Dictionary. The conduct contemplated by the policy exception is physical contact other than the simple hug or supportive pat a therapist might give a patient. By modifying physical contact with the word erotic, it is clear that the policy provision was intended to reach behavior which is sexual in nature or indicative of sexual intimacy, such as lying in a prone position together and suggestions of pleasing each other involving nudity. Even if there was no actual touching, as claimed by Smith, the special provision in the policy is triggered by alleged erotic physical contact. There is no question that the behavior engaged in by Smith must be characterized as inappropriate sexual conduct between a therapist and patient. Smith's conduct was erotic physical contact, not mere physical contact, precisely the behavior the limitation in the special provision of the policy contemplated.

*Judgment reversed. Birdsong, P. J., and Smith, J., concur.*

DECIDED SEPTEMBER 15, 1995.

*Duncan & Mangiafico, George E. Duncan, Jr., Leslie P. Becknell,* for appellant.
*Walbert & Mathis, David F. Walbert, Charles A. Mathis, Jr., Shelly Tice, O. Hale Almand, Jr., Daniel E. Potter,* for appellees.