A95A1998. SCHAFER PROPERTIES et al. v. TARA STATE BANK.

(469 SE2d 743)

ANDREWS, Judge.

This case is before us on appeal from the trial court's order granting summary judgment to Tara State Bank ("Bank") on its claim against Schafer Properties and Paul and John Hoffman ("defendants") for default on an $85,000 promissory note. Defendants admit they are in default on the note but claim the note is void and unenforceable as part of a compromise agreement based on a previous note for which there was no consideration and which allegedly violated the "anti-tying" provisions of 12 USC 1972.

The trial court found the note was part of a negotiated, bargained-for, compromise agreement in which both parties were represented by counsel, both parties made concessions, and to which both parties mutually agreed. Accordingly, the court found the note was valid and enforceable and granted summary judgment to the Bank on its claim. We agree and affirm.

The $85,000 note and the compromise agreement came about as a result of a dispute over another note ("1990 note") for $242,973.13, executed in 1990 by Schafer Insulation and personally guaranteed by Don Schafer and the Hoffmans. It is the terms of this 1990 note which defendants claim render the compromise agreement and the $85,000 note unenforceable. Schafer Insulation received no cash in exchange for executing this 1990 note. The consideration for this note was another note for approximately $177,000 from Schafer Insulation to the Bank and a credit by the Bank of $66,000 to a previous bad debt of King Stewart Lakewood (KSL) Hardware. KSL Hardware defaulted earlier in 1990 on a note personally guaranteed by Don Schafer and Ralph Kessler, the shareholders. Don Schafer and Kessler declared bankruptcy and the Bank was forced to charge off approximately $300,000 in bad debt from that note.

After a dispute arose over payment of the 1990 note,[1] the Hoffman brothers and the Bank reached a compromise agreement. In addition to the $85,000 note, the agreement called for a $105,000 cash payment to the Bank and also provided that the Bank would forgive approximately $59,000 of debt owed on the previous 1990 note. Although the note was signed by Schafer Properties and the Hoffmans individually, the compromise agreement was signed only by the Hoffman brothers.

1. The Hoffmans argue the note lacked consideration because the 1990 note and the compromise agreement were in violation of 12 USC 1972. This statute provides, in pertinent part: "A bank shall not in any manner extend credit, lease or sell property of any kind, or furnish any service, or fix or vary the consideration for any of the foregoing, on the condition or requirement . . . that the customer shall obtain some additional credit, property, or service from such bank other than a loan, discount, deposit, or trust service; . . . [or] provide some additional credit, property, or service to such bank, other than those related to and usually provided in connection with a loan, discount, deposit, or trust service. . . ." 12 USC 1972 (1) (A) and (C).

Federal courts have found a violation of this statute when the

---

[1] It appears the Hoffmans had become the sole owners of Schafer Insulation due to Schafer's conveying or pledging his stock in the company to them. As the Hoffmans were not involved in the default on the KSL Hardware debt, they objected to being forced to assume part of that debt in order to continue their relationship with the Bank.

transaction involves "a bank requiring one customer to guarantee the debt of another unrelated or incidentally related customer." (Emphasis omitted.) *Palermo v. First Nat. Bank &c. Co. of Oklahoma City*, 894 F2d 363, 370 (10th Cir. 1990). The purpose behind these anti-tying provisions is to "prohibit anti-competitive practices which require bank customers to accept or provide some other service or product or refrain from dealing with other parties in order to obtain the bank product or service they desire." (Citation and punctuation omitted.) *Swerdloff v. Miami Nat. Bank*, 584 F2d 54, 58 (5th Cir. 1978).

Although the Bank forgave $59,000 of the debt owed on the 1990 note, $6,783.71 still remained of the $66,000 credited to the bad debt of KSL Hardware. Defendants argue that forcing them to include this $6,783.71 in the compromise agreement violates the anti-tying provisions of 12 USC 1972 discussed above and, therefore, the note is unenforceable because it is based on an illegal transaction and a violation of public policy, resulting in a partial failure of consideration.

The Compromise Agreement provides: "It is the intention of the parties in executing this Settlement Agreement that it shall be effective as a bar to each and every claim, demand, or cause of action hereinabove described except for those documents executed simultaneously as a part hereof. The parties expressly consent that this Release shall be given full force and effect according to each and all of its terms and provisions. The parties agree that this Release is an essential and material term of the Settlement Agreement and that without such Release no settlement would have been reached by the parties. The parties have been advised by their counsel with respect to such Release and understand and acknowledge the significance and consequences of this Settlement Agreement."

While there is no Georgia case law on this issue, a federal district court has expressly approved the use of settlement agreements to resolve this type of dispute and rejected a claim that the alleged anti-tying violation made the note unenforceable. In that case, the borrower executed a Settlement Agreement with the bank and subsequently defaulted. He claimed that "allowing a waiver of anti-tying claims while the original coercion still exists would defeat the policies which underlie the statute, namely to protect borrowers from unfair and predatory practices by banks." (Citations and punctuation omitted.) *Gustin v. Fed. Deposit Ins. Co.*, 835 FSupp. 503, 508 (W. D. Mo. 1993). The court rejected this contention, stating that the issue was not one of waiver, but, rather, whether a person could compromise and release his or her private cause of action after it has accrued. Id. The court found that, as a matter of public policy, a private cause of action under the anti-tying statute, like any other cause of action, may be compromised and settled. Id. We agree with this finding, noting that it is in accord with the position that settlement agreements

are highly favored under the law and will be upheld whenever possible as a means of resolving uncertainties and preventing lawsuits. *D. H. Overmyer Co. v. Loflin*, 440 F2d 1213, 1215 (5th Cir. 1971).

2. Defendants also claim that even if the compromise agreement bars these claims as defenses to the 1990 note, the compromise agreement specifically states that these claims are not barred with respect to documents executed simultaneously with the agreement. Because over $6,000 from the previous allegedly illegal 1990 note is included in the $85,000 note, then defendants claim their defenses are not barred in connection with this note, executed as part of the compromise agreement. We disagree. To put such a strained construction on the release provisions would render them meaningless. This Court construes contracts so as to give them the meaning which will best carry out the intent of the parties. *Brooke v. Phillips Petroleum Co.*, 113 Ga. App. 742, 744 (2) (149 SE2d 511) (1966). In doing this we must look at the instrument as a whole and consider it in light of all the surrounding circumstances. *Brooke*, supra at 744. Thus, the favored construction will be that which gives meaning and effect to all the terms of the contract over that which nullifies and renders meaningless a part of the document. *Brooke*, supra at 744. The release paragraph is unambiguous and provides: "The parties fully release and forever discharge each other from any and all claims, demands, liens, agreements, contracts, promises, covenants, actions, suits, causes of action, obligations, controversies, debts, costs, expenses, damages (compensatory, punitive, or otherwise), judgments, orders, professional complaints and liabilities of whatever kind or nature, in law, in equity, or otherwise, whether known or unknown, vested or hidden, which may have existed, do exist or which may exist in the future concerning their injuries, relationship, performance reputations, services, or the termination of their relationship."

Accordingly, pretermitting the issue of whether or not defendants could show any anti-tying violations, we find that these claims were properly the subject of a compromise settlement agreement, and, having bargained for, and negotiated this agreement, defendants are now bound by it. *Gustin*, supra at 508. Therefore, as the Bank has shown there is no genuine issue of material fact to be decided and it is entitled to judgment as a matter of law, the trial court correctly granted summary judgment to the Bank on the $85,000 promissory note. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

3. In light of our holdings in Divisions 1 and 2, we do not address the remaining enumeration of error.

*Judgment affirmed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED FEBRUARY 28, 1996.

*John W. Mrosek*, for appellants.

*Glaze, Glaze & Fincher, Laurel E. Henderson, Theodore P. Meeker III*, for appellee.