**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and DILLARD, J.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**October 31, 2012**

# In the Court of Appeals of Georgia

A12A1106. KOTHARI et al. v. TESSFAYE et al.                    JE-051

ELLINGTON, Chief Judge.

In an attempt to settle protracted litigation arising from the sale of real property, the plaintiffs, Santosh and Sarala Kothari, and the defendants, Tassew Tessfaye and Oladayo Osinuga, entered into a settlement agreement, which became a consent judgment following the trial court's approval on April 28, 2008. In November 2010, the defendants filed a motion for contempt and a motion to set aside the consent judgment, asserting that it was unenforceable because it lacked mutuality and was impossible to perform. The trial court denied the contempt motion, but granted the motion to set aside. The plaintiffs appeal,[1] contending that the trial court erred in setting aside the consent judgment instead of entering judgment in their favor instanter

---

[1] This Court granted the plaintiffs' application for interlocutory appeal.

pursuant to the undisputed, express, and unambiguous terms of the original judgment. In addition, they contend that the court erred in issuing prior rulings that altered material terms of the consent judgment and that the consent judgment should now be enforced pursuant to its original terms. For the following reasons, we reverse the court's grant of the motion to set aside the consent judgment and reverse the court's prior orders to the extent that they materially altered the original deadlines in the consent judgment. We also remand this case to the trial court with direction to enter judgment instanter in favor of the plaintiffs pursuant to the original terms of the consent judgment.

The record shows the following undisputed, relevant facts. In 2003 and 2004, the defendants purchased real property in DeKalb County from the plaintiffs and executed two promissory notes totaling $300,500 and a deed to secure debt. The deed to secure debt provided that the defendants would construct an access road that would connect nearby Panola Road to their property and to adjoining property owned by the plaintiffs (hereinafter, "the road"). The road was to be built and dedicated to DeKalb County as a public road by November 2004. In 2005, the plaintiffs filed a verified complaint for injunctive relief, claiming that the defendants had failed to build the road in compliance with the agreement and deed and asking the court to order the

2

defendants to do so. Over the next three years, the litigation expanded to include a variety of claims, counterclaims and motions between the parties. The parties ultimately settled all of their claims, however, and the trial court approved the settlement agreement in April 2008 and made it an order of the court (hereinafter, "the consent judgment"). The consent judgment states, in relevant part, as follows:

> *The parties have represented to the Court that they have settled and resolved all of the issues set forth in the [pending litigation] and[,] after a review of the entire record and the representations of the parties[,] the following is made an order of the Court*: . . .
>
> 1. Defendants will pay to the Plaintiffs the sum of $200,000.00 (two hundred thousand dollars and zero cents) which represents payment of the two notes referenced [in the Plaintiffs' complaint]. $84,500.00 (eighty four thousand five hundred dollars and zero cent[s]) which was previously deposited into the registry of the Superior Court of DeKalb County shall be paid [to the Plaintiffs] instanter. . . . The remaining $115,500.00 (one hundred and fifteen thousand five hundred dollars and zero cents) will be paid to Plaintiffs within 120 days from the date of this Order[.] . . .
>
> 2. In consideration of the full payment of the $200,000.00 . . . and the placement of $100,000.00 into an escrow account as detailed in paragraph 5 below, Plaintiffs will cause all deeds to secure debt that were filed by Plaintiffs to be cancelled.

3. If any amount set forth above is not paid when due then Plaintiff shall have a judgment instanter for $200,000.00 minus any amounts paid prior to the expiration of 120 days from the date of this Order. Upon payment of the $200,000.00 and deposit of the $100,000.00 into the escrow account[,] as set forth in paragraph 5 below[,] the Plaintiffs will cause the deeds to secure debt to be cancelled.

4. Within two years from the date of this Order, but in no event later than April 28, 2010[,] Defendants shall, at their sole cost and expense, construct and dedicate to DeKalb County a public access road ("Public Access Road") with a cul de sac to be located on Plaintiff's Property in compliance with [the attached exhibits]. . . .

5. . . . [N]o later than 150 days from the date of this Order, Defendants shall deposit the sum of $100,000.00 (one hundred thousand dollars and zero cents) into an escrow account[.] . . .

6. *If the Public Access Road is not completed and dedicated within two years from the date of this Order, but in no event later [than] April 28, 2010, Defendants shall be considered in default and be liable to the Plaintiffs in the sum of $300,000.00 (three hundred thousand dollars and zero cents).*

7. The Defendants have 10 business days from April 28, 2010[,] to notify the Plaintiffs in writing, sent via certified mail or statutory overnight mail[,] that they do not consider themselves to be in default ("Default Objection") under paragraph 6 above. At that time, any issues regarding

completion and acceptance and compliance with the obligations as they relate to the Public Access Road shall be resolved in the Superior Court of DeKalb County. *The only issue to be determined is whether the Defendants have met the deadlines set forth in this order. No other defenses or legal excuses shall be offered by the Defendants in defense of the failure to complete and dedicate the Public Access Road within . . . the time frame set forth therein.*

8. *If Defendants do not send the Default Objection within the time frame set forth in Paragraph 7 above[,] Plaintiffs shall have an immediate right to make demand upon and receive the $100,000.00 in escrow and shall be entitled to a Judgment in the amount of $200,000.00 instanter upon request made to this Court.* All escrow agents shall comply with this order.

9. If at any time the Defendants wish to declare themselves in default of the obligation to construct the Public Access Road, they may do so. In that event, Plaintiffs will be entitled to demand and receive the $100,000.00 in escrow instanter and the judgment shall be in the amount of $200,000.00[,] less $1,000.00 per month for each month prior to April 2010.

10. Except for the rights and claims specifically set forth herein, Plaintiffs and Defendants herein release all rights, claims, and actions, known or unknown, suspected or unsuspected, which they now have against each other arising out of any alleged act, omission, service, circumstance, occurrence or transaction from the beginning of time to the

date hereof, including, but not limited to, all claims relating to the above listed lawsuit[.]

(Emphasis supplied.)

Three months after the court entered the consent judgment, the defendants filed a motion for contempt, asserting that the plaintiffs had improperly refused to cancel the deed to secure debt pursuant to Paragraph 2 of the consent judgment, and they requested an emergency hearing on the motion. In August 2008, the trial court ruled that the emergency hearing could not be conducted in a timely manner because of the court's busy calendar, so it suspended the running of the time periods in the consent judgment (thereby indefinitely extending the deadlines for the defendants' compliance with the judgment) until the contempt motion could be heard and ruled upon.

In July 2010, after all of the original deadlines in the consent judgment had passed, the plaintiffs filed a motion for judgment instanter on the consent judgment. The plaintiffs argued that the defendants had failed to timely comply with any of their obligations under the consent judgment; that the defendants had expressly waived all defenses for their failure to comply; that the defendants were automatically in default under the express terms of the judgment; that the defendants had failed to timely object to a finding that they were in default; and, therefore, that they (the plaintiffs)

6

were entitled to judgment instanter for the dollar amounts specified in the consent judgment, plus interest. Before the trial court ruled on the motion, however, the defendants filed a second motion for contempt and a motion to set aside the consent judgment. Their motion to set aside was based, inter alia, upon their contention that the consent judgment was "nullified by the failure of the condition of DeKalb County to accept the road for public dedication as required under the [o]rder"; they relied solely on traditional contract defenses found in OCGA §§ 13-5-4; 13-5-8; and 13-5-10.[2]

Following a hearing, the trial court issued an order in June 2011 in which it denied the defendants' motion for contempt and established new deadlines for the defendants' compliance with the consent judgment. Then, in July 2011, after the defendants filed a motion to reconsider the trial court's ruling because the court had failed to rule on their motion to set aside the consent judgment, the court entered a separate order granting the defendants' motion to set aside the consent judgment,

---

[2] See OCGA §§ 13-5-4 ("If the consideration upon which a contract is based was given as a result of a mutual mistake of fact or of law, the contract cannot be enforced."); 13-5-8 ("A condition, precedent or subsequent, not complied with, insufficiency or failure of consideration, or any act of the opposite party, by which the obligation of the contract has ceased, may be pleaded as a defense."); 13-5-10 ("Where covenants are dependent, the failure of performance by the opposing party may be a good defense.").

ruling that it was void due to lack of mutuality and because it was impossible for the defendants to build a road that would meet the requirements of the consent judgment when DeKalb County would not accept dedication of the road. In so ruling, however, the court did not address the effect of the defendants' express waiver of all defenses and legal excuses for their failure to timely complete and dedicate the road, pursuant to Paragraph 7 of the consent judgment.

1. As an initial matter, it is important to note that this case involves more than a mere settlement agreement between the parties, because, at the parties' own request, the agreement was adopted by and decreed to be an order of the trial court.

> [I]t is generally accepted that a consent judgment differs from a judgment rendered on the merits in that it results from an affirmative act of the parties rather than the considered judgment of the court following litigation of the issues. A consent judgment is one entered into by stipulation of the parties with the intention of resolving a dispute, and generally is brought to the court by the parties so that it may be entered by the court, thereby compromising and settling an action. Although a consent judgment is brought about by agreement of the parties, it is accorded the weight and finality of a judgment. Thus, a consent decree is an enforceable judgment and can be accorded preclusive effect.[3]

---

[3] See *Rufo v. Inmates of Suffolk County Jail*, 502 U. S. 367, 378 (II) (112 SC 748, 116 LE2d 867) (1992) (A consent judgment is an agreement that the parties desire and expect will be enforceable as a judicial decree, subject to the rules

(Citations and punctuation omitted.) *Brown &c. Corp. v. Gault*, 280 Ga. 420, 423-424 (3) (627 SE2d 549) (2006). Consequently, the defendants' motion to set aside the consent judgment was subject to the provisions of OCGA §§ 9-12-16 and 9-11-60 (d). See *Leventhal v. Citizens &c. Bank*, 249 Ga. 390, 391-393 (1), (2) (291 SE2d 222) (1982).

(a) Under OCGA § 9-12-16, a "judgment of a court having no jurisdiction of the person or the subject matter or which is void for any other cause is a mere nullity and may be so held in any court when it becomes material to the interest of the parties to consider it." "A void judgment is one that has a defect apparent on its face. Where jurisdiction exists both of the subject matter and of the parties, as well as jurisdiction to make the particular order in question, an order is not void, but voidable, however erroneous or irregular it may be." (Footnotes omitted.) *State Auto Mutual Ins. Co. v. Relocation &c. Services*, 287 Ga. App. 575, 578 (4) (651 SE2d 829) (2007). In this case, there is no issue regarding the trial court's original jurisdiction, nor have the defendants pointed to any other defect on the face of the consent judgment that would render it void, instead of merely voidable upon motion by one of the parties.

---

applicable to other judgments and decrees.).

9

(i) Further, although the trial court ruled that the consent judgment was void because it was impossible for the defendants to comply with the judgment's requirement that they complete and dedicate the road, the Supreme Court of Georgia has held that "[i]mpossibility of performance is a defense relating to contracts, not to judgments[,]" and is therefore inapplicable to a motion to set aside a consent judgment. *Leventhal v. Citizens &c. Bank*, 249 Ga. at 393 (3).[4] The Court explained that

---

[4] In *Leventhal*, a bank and Leventhal, a guarantor on a note held by the bank, entered into an agreement in which the bank promised to assign three deeds to secure debt to him if he paid the amount due on the note. *Leventhal v. Citizens &c. Bank*, 249 Ga. at 391. Before entering into the agreement, however, Leventhal failed to do a title search to ensure that the bank had title to the property it was promising to convey. Id. After executing the agreement, Leventhal learned that the bank had no recorded interest in the property, and he refused to pay the note. Id. The bank asserted that Leventhal had defaulted on the agreement and obtained a judgment for the amount of the note plus interest and attorney fees. Id. Leventhal then filed a complaint in equity to set aside the court's judgment and the underlying consent agreement on the ground of fraud and mutual mistake, as well as on the fact that it was impossible for the bank to assign to him any interest in the property, as required by the agreement. Id. at 391-393 (1) - (3). The Supreme Court ruled that Leventhal had failed to show that the judgment was procured fraudulently or was the result of a mistake, as required by former Code § 81A-160 (e) (currently OCGA § 9-11-60 (d)). Id. at 391-393 (1) - (2). In addition, the Court ruled that the trial court's judgment could not be set aside on the basis of impossibility of performance, because impossibility was a contract defense and was not applicable to a motion to set aside a judgment. Id. at 393 (3).

10

[w]here A sues B on a contract, B may defend on the basis of impossibility of A's performance, but where A sues B [on the contract] and obtains a judgment, B may not later set aside that judgment on the basis of an impossibility of performance [that] B [had] overlooked in defending the suit. Similarly, *where A sues B on a contract and they [settle the suit by entering] into a consent judgment, B cannot later set that judgment aside on the basis of an impossibility of performance [that B had] overlooked [before agreeing to the consent judgment]*.

(Citation omitted; emphasis supplied.) Id. at 393 (3). In this case, the defendants admit that, when the parties agreed to the consent judgment, they knew that DeKalb County might not accept the road for dedication. Yet, the defendants voluntarily agreed to the unambiguous provision that the plaintiffs would be entitled to a judgment instanter for $300,000 if they (the defendants) failed to complete and dedicate the road by April 2010, and they *also* agreed to waive every defense and excuse for such failure.[5] Consequently, the defendants accepted the risk that they would be unable to complete and dedicate the road *for any reason* (including the county's refusal to accept the dedication) and would, therefore, be liable to the plaintiffs for $300,000. For this reason, the defendants cannot now argue that the consent judgment should be set aside based upon impossibility of performance of the road provision when they admittedly

---

[5] See Division 2, infra, regarding the waiver of defenses.

11

knew that they might be unable to comply with the provision and when they agreed

to a consent judgment that specifically addressed that possibility by providing an

alternative method of compliance, i.e., the payment of $300,000 to the plaintiffs.

*Leventhal v. Citizens &c. Bank*, 249 Ga. at 393 (3).

(ii) The trial court also concluded that the consent judgment was void due to the

lack of mutuality of the parties' obligations, ruling that the consent judgment contains

a "discretionary contingency by a nonparty," specifically DeKalb County's acceptance

of the road for dedication, so "no contract can be formed until the contingency is met."

According to the court, because the county will not accept the road, "there is no

contract." In so ruling, the court relied upon *Stone Mountain Properties v. Helmer*,

139 Ga. App. 865, 867 (1) (229 SE2d 779) (1976), a contract case in which this Court

held that "contracts conditioned upon discretionary contingencies lack mutuality" and

are unenforceable until that contingency has occurred.[6] That case is clearly

---

[6] We note that the rule stated in *Stone Mountain Properties* and its progeny only applies when the *entire contract* is conditioned upon the contingency and, therefore, is not enforceable unless or until the contingency occurs. *Stone Mountain Properties v. Helmer*, 139 Ga. App. at 867 (1) (A contract provision that made the purchaser's obligation to purchase real property "contingent upon Purchaser's being able to obtain approval from the Seaboard Airline Railroad to run a spur rail line into the property at a location satisfactory to the Purchaser," was a condition precedent to the *entire contract*; the condition deprived the contract of mutuality because the purchaser was the sole judge of whether he was satisfied.); see also *Allen v. Sea Gardens Seafood*,

12

distinguishable from the instant case, however, because the county's acceptance of the road was only one aspect of one of the provisions of the consent judgment, and nothing in the consent judgment suggests that the county's acceptance of the road was a condition precedent to the existence of the consent judgment or the underlying settlement agreement. See *Jackson Electric Membership Corp. v. Ga. Power Co.*, 257 Ga. 772, 773-774 (1) (364 SE2d 556) (1988) (A contract provision requiring one party's membership in the other's organization was not a condition precedent to the existence of the contract, but was, instead, a condition precedent to the enforcement of one of the contract's provisions.). Further, the Supreme Court has clarified that "[t]he supposed requirement of mutuality of obligation is merely one of mutuality of consideration." (Citation, punctuation and emphasis omitted.) *Jackson Electric Membership Corp. v. Ga. Power Co.*, 257 Ga. at 774 (1), n. 2. Thus, as with the

---

290 Ga. 715 (723 SE2d 669) (2012) (The parties entered into a settlement agreement that was conditioned upon their obtaining any necessary permits, but when they asked the court to enter a consent judgment on the agreement, there was a disagreement on the specific language to be used or the nature of the contingency. The trial court eventually entered a "consent judgment" proposed by the appellee, but the appellants refused to sign it because it was no longer conditioned upon obtaining the permits. The Supreme Court vacated the judgment because both parties had not consented to it and because the trial court, rather than entering a judgment that enforced the settlement agreement as written, impermissibly modified it by eliminating the condition precedent to the entire agreement.).

13

defense of impossibility of performance, an assertion that a contract lacks mutuality of obligations is only a defense to enforcing the provisions of the contract and is not a basis for finding that a consent judgment is void.

Accordingly, we conclude that the trial court erred in finding that the consent judgment was void due to impossibility of performance or lack of mutuality. As a result, OCGA § 9-12-16 does not apply in this case and cannot serve as a basis to set aside the consent judgment.

(b) As for OCGA § 9-11-60 (d), it provides that a "motion to set aside may be brought to set aside a judgment based upon: (1) Lack of jurisdiction over the person or the subject matter; (2) Fraud, accident, or mistake or the acts of the adverse party unmixed with the negligence or fault of the movant; or (3) A nonamendable defect which appears upon the face of the record or pleadings." The defendants failed to argue in the court below that the consent judgment should be set aside under this statute, nor have they cited to anything in the appellate record that would support such a ruling. Accordingly, OCGA § 9-11-60 (d) provides no basis for setting aside the consent judgment in this case. See *Leventhal v. Citizens &c. Bank*, 249 Ga. at 392-393 (1) - (2) (holding that Leventhal's failure to show that the bank committed actual fraud in procuring the court's judgment, as well as his failure to search the title of the

14

property at issue before entering the settlement agreement, were fatal to his argument that the court's judgment should be set aside on the basis of fraud or mistake).[7]

Thus, we conclude that the trial court erred in setting aside the consent judgment. We reverse the court's order and remand this case back to the trial court for reinstatement of the consent judgment and for consideration of the plaintiffs' pending motion for judgment instanter, which is based upon the defendants' failure to fulfill its obligations under the consent judgment. Before doing so, however, we must address the plaintiffs' contention that the defendants expressly, voluntarily and unambiguously waived all defenses and legal excuses for its failure to complete and dedicate the road. In addition, we must address the plaintiffs' contention that the trial court abused its discretion by suspending the running of the time periods leading to the original deadlines in the consent judgment.

---

[7] See also *Hall v. VNB Mortgage Corp.*, 170 Ga. App. 867 (318 SE2d 674) (1984) (In a consent order that resolved a dispossessory action, a tenant at sufferance agreed to timely pay rent and, if it failed to do so, the property owner would be entitled to an immediate writ of possession without further notice or hearing. Because there was no evidence that the consent order was executed as a result of fraud or mistake, the tenant was bound to the terms of the consent order, and the trial court properly granted the writ of possession upon the tenant's failure to comply with the consent order.).

2. As shown above, Paragraph 7 of the consent judgment contains the following provision: "No other defenses or legal excuses shall be offered by the Defendants in defense of the failure to complete and dedicate the Public Access Road within . . . the time frame set forth therein."

"[I]t is the paramount public policy of this State that courts will not lightly interfere with the freedom of parties to contract on any subject matter, on any terms, unless prohibited by statute or public policy, and injury to the public interest clearly appears." (Footnote omitted.) *Bryan v. MBC Partners*, 246 Ga. App. 549, 552 (3) (541 SE2d 124) (2000). In fact, "settlement agreements are highly favored under the law and will be upheld whenever possible as a means of resolving uncertainties and preventing [or settling] lawsuits." (Citation omitted.) *Schafer Properties v. Tara State Bank*, 220 Ga. App. 378, 380-381 (1) (469 SE2d 743) (1996). See also *Bradley v. Bradley*, 225 Ga. App. 530, 533 (484 SE2d 280) (1997) ("A contract of compromise is binding on the parties, and neither party to a compromise has power to disregard it if it was full and final between them.") (citation and punctuation omitted).

Moreover, in most circumstances, a party's broad freedom to contract includes the right to waive his or her defenses to the enforcement of that contract.

16

Waiver is a voluntary relinquishment of some known right, benefit, or advantage, which, except for such waiver, the party otherwise would have enjoyed. Laws made for the preservation of public order or good morals cannot be done away with or abrogated by any agreement; but a person may waive or renounce what the law has established in his favor, when he does not thereby injure others or affect the public interest.[8] As a general premise, waiver need not be supported by consideration, is unilateral in character, must be made with knowledge and intent, and can be established by a certain course of conduct. [Moreover,] [o]nce the incidental right or contractual benefit has been waived or relinquished, it cannot be reclaimed.

(Citations and punctuation omitted.) *Aaron Rents v. Corr*, 133 Ga. App. 296, 302-303 (211 SE2d 156) (1974). It follows that a party to a contract may waive all defenses to the enforcement of the contract that otherwise would have been available to him or her, as long as the contract is otherwise valid and such waiver does not adversely

---

[8] See OCGA § 1-3-7 (formerly Ga. Code Ann. § 102-106) ("Laws made for the preservation of public order or good morals may not be dispensed with or abrogated by any agreement. However, a person may waive or renounce what the law has established in his favor when he does not thereby injure others or affect the public interest."); see also *Bryan v. MBC Partners*, 246 Ga. App. at 552 (3) ("This ancient rule applies to all the private relations in which persons may place themselves toward each other and includes the waiver of constitutional rights.") (footnotes omitted); see, e.g., *Dept. of Transp. v. Smith*, 210 Ga. App. 741, 746 (5) (437 SE2d 811) (1993) (In a consent order, the parties agreed to change the venue to Richmond County. Thus, by consenting to the change of venue, the defendants waived its right to have the case heard in the county where the cause of action arose.).

17

affect others or the public interest. *Tedesco v. CDC Federal Credit Union*, 167 Ga. App. 337, 340 (2) (306 SE2d 397) (1983) (physical precedent only); see *Young v. John Deere Plow Co.*, 102 Ga. App. 132, 135 (115 SE2d 770) (1960) (Provisions in a note and a sales contract in which the defendant expressly waived the right to assert the defense of failure of consideration in an action on the contracts were valid and enforceable as there did not appear to be any danger of injury to others or any affect to the public interest by the waiver.).[9]

In this case, the defendants have failed to demonstrate any basis to support a finding that their express, voluntary waiver of all of their defenses and legal excuses for failing to complete and dedicate the road is invalid or unenforceable; in fact, they failed to even address the waiver issue in their appellate briefs. Accordingly, we conclude that the waiver is plain and unambiguous[10] and, absent any evidence that the

---

[9] See also *Jones v. Universal C. I. T. Credit Corp.*, 88 Ga. App. 24, 26 (2) (75 SE2d 822) (1953) (A debtor under a conditional sales contract, by expressly agreeing not to set up as a defense to an action on the contract by an assignee thereof any claim he may have had against the assignor, waived his right to plead failure of consideration in an action on the contract by the assignee.).

[10] "The cardinal rule of contract construction is to determine the intention of the parties. But no construction is required or even permissible when the language employed by the parties in the contract is plain, unambiguous, and capable of only one reasonable interpretation." (Citations and punctuation omitted.) *Walker v. Virtual Packaging*, 229 Ga. App. 124, 127-128 (3) (493 SE2d 551) (1997). See also *Rivergate*

18

waiver constitutes a danger to others or to the public interest, we conclude that it is valid and enforceable. *Young v. John Deere Plow Co.*, 102 Ga. App. at 135.

Consequently, when considering the plaintiffs' motion for judgment instanter upon remand, the trial court shall limit such consideration as required in Paragraph 7 of the consent judgment, as follows: "The only issue to be determined is whether the Defendants have met the deadlines set forth in this order."

3. The final issue to be resolved, then, is whether the trial court abused its discretion in suspending the running of the time periods leading to the original deadlines in the consent judgment. Under Paragraphs 1, 4, 5 and 6 of the April 28, 2008 consent judgment, the defendants were required to do the following: pay the plaintiffs $115,500 within 120 days from the date of the judgment (August 26, 2008); deposit $100,000 into an escrow account within 150 days from the date of the judgment (September 25, 2008); and complete and dedicate the road within two years "but in no event later [than] April 28, 2010." On August 8, 2008, however, the trial court suspended the running of the time periods until it could conduct a hearing and

---

*Corp. v. McIntosh*, 205 Ga. App. 189, 192 (1) (421 SE2d 737) (1992) ("The construction of a contract is a matter of law for the court under OCGA § 13-2-1, particularly where, as here, the terms are unambiguous.") (citations and punctuation omitted).

19

rule upon the defendants' motion for contempt. Although the court twice restarted the running of the time periods, it eventually issued an order on June 13, 2011, that superseded those rulings and officially restarted the running of the time periods, designating that date as day 102 for purposes of determining the revised deadlines. As a result, the court effectively reset the deadlines as follows: the 120 day deadline for paying the plaintiffs $115,500 became July 1, 2011 ; the 150 day deadline for depositing $100,000 into an escrow account became August 1, 2011 and the deadline for the defendants' completion and dedication of the road became March 4, 2013.

Under the circumstances presented in this case, and as explained below, we conclude that it is unnecessary to decide whether the trial court abused its discretion in resetting the deadlines in this case and that, upon remand, the plaintiffs will be entitled to judgment instanter, regardless which deadlines are in effect.

As for the defendants' obligation to pay the plaintiffs $115,500, the new July 1, 2011 deadline had already passed before the trial court set aside the consent judgment on July 13, 2011. Therefore, because the consent judgment was still a valid order of the court on July 1, 2011, the defendants' failure to pay the plaintiffs $115,500 by that date entitles the plaintiffs to a judgment instanter for that amount, pursuant to Paragraph 3 of the judgment.

20

As for the new August 1, 2011 deadline for depositing $100,000 into an escrow account, the deposit was a condition the defendants had to meet (in addition to the $115,500 payment, above) before the plaintiffs would be required to cancel the security deeds, pursuant to Paragraphs 2 and 3 of the consent judgment. More importantly, however, the deposit was then to be held in escrow until the defendants either timely completed and dedicated the road, at which time the money would be returned to the defendants, or defaulted on the road provision, at which time the plaintiffs would be entitled to a judgment instanter for $300,000 (the $100,000 in escrow plus $200,000), pursuant to Paragraphs 6 and 8 of the consent judgment. Thus, the determination of the appropriate deadline for requiring the defendants to make the $100,000 escrow deposit is basically dependent on whether the defendants have defaulted on the road provision.

On that issue, regardless whether the trial court had the authority to reset the deadline for completing and dedicating the road for March 4, 2013, the defendants concede that they are unable to fulfill that obligation and, as a result, they are unable to avoid defaulting on that provision of the consent judgment. Consequently, we conclude that the plaintiffs are entitled to judgment in the amount of $300,000 instanter, pursuant to Paragraph 8 of the consent judgment.

In sum, we hereby direct the trial court, upon remand, to enter judgment instanter in favor of the plaintiffs for $415,500 ($115,500 pursuant to Paragraph 3 and $300,000 pursuant to Paragraph 8 of the consent judgment). In addition, the trial court shall direct the plaintiffs to cancel the security deeds, pursuant to Paragraphs 2 and 3 of the consent judgment.

*Judgment reversed, and case remanded with direction. Phipps, P. J., and Dillard, J., concur.*